IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAZER IP, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>MICROCHIP TECHNOLOGY INC.,<br><br>        Defendant. | C.A. No. 21-1026-RGA-JLH |

MEMORANDUM ORDER

Before me is Defendant's motion for judgment on the pleadings. (D.I. 18). I have considered the parties' briefing. (D.I. 19-21). For the reasons set forth below, Defendant's motion is DENIED.

I.  BACKGROUND

Plaintiff Lazer IP sued Defendant Microchip Technology alleging infringement of claims 12, 24, and 25 ("the Asserted Claims") of U.S. Patent No. 6,701,508 ("the '508 Patent") on July 15, 2021. (D.I. 1).

The '508 Patent "relates to a system and a method of using a graphics applications programming interface in programming the design of a microcontroller." '508 Patent at 1:22-25. Recognizing the problem that "the user interface portions of many conventional software applications for programming microcontrollers are very difficult to use[,]" the '508 Patent describes an inventive "microcontroller programming application" that "provides an organized way of displaying a device editor workspace information in an efficient manner." *Id.* at 2:25-58; (*see also* D.I. 1 at ¶10 ("The invention of the '508 Patent included the steps of compartmentalizing

the design of a microcontroller by modularizing the various components that create the desired functionality of the microcontroller using a graphic user interface.")).

Claim 12 is representative of the Asserted Claims for purposes of this motion. (*See* D.I. 21 at 2 n.1 ("Lazer IP concedes that claim 12 is representative[.]")). Claim 12 requires:

> A device editor system for programming a target microcontroller device, comprising:
>
> > a user module selection workspace for providing a plurality of selectable pre-configured user modules for programming said target microcontroller device;
> >
> > a user module placement workspace for placing selected user modules of said plurality of user modules; and
> >
> > a user module pin out workspace for providing pin out parameterization for said selected user modules.

During prosecution of the '508 Patent, the patent applicant explained that the claimed user module workspaces each "perform[] a particular independent function, facilitating a particular step of a programmable microcontroller design process." (D.I. 1 at ¶11 (quoting the prosecution history)). The patent applicant distinguished the Asserted Claims from the prior art by arguing that, while the prior art "teaches a system for designing and simulating a circuit using a single display window[,]" the prior art "does not teach, describe, or suggest a device editor sub-system comprising a user module selection[] workspace, a user module placement workspace, and a user module pin out workspace as claimed." (*Id.* at ¶12 (quoting the prosecution history)). According to Plaintiff, the claimed "user modules" "benefited computer operation … [and] functionality." (*Id.* at ¶¶11-12, 11). For example, "[t]he user module placement workspace allows a user to place the selected user modules according to the hardware resources of the electronic device." (*Id.* at ¶11 (quoting the prosecution history)). Thus, "an aspect of the current invention provides a programming application that provides an organized device editor workspace for efficient programming of a microcontroller." (*Id.* at ¶12 (quoting the prosecution history)).

2

## II.     LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make this determination. *See id*.

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability: laws of nature, natural phenomena, and abstract ideas. *See Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

The Supreme Court laid out the framework for distinguishing "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355. First, the court must determine whether the claims are directed to a patent-ineligible concept. *See id*. If the answer is yes, the court must "consider the elements of each claim both individually and as an ordered combination to determine whether [there is an]

3

inventive concept— *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (cleaned up).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law[.]"  *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).   The district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (cleaned up).

## III. DISCUSSION

"The first step in the *Alice* inquiry … asks whether the focus of the claims is on [a] specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).  This analysis "depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance."  *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294 (Fed. Cir. 2020).

Defendant argues that the Asserted Claims "are directed to the abstract idea of organizing and displaying information related to programming a microcontroller."  (D.I. 19 at 7).  To support this, Defendant argues that "the claimed workspaces at best make it easier for a circuit designer to organize and process the programming information more quickly[,]" where, "in the context of a graphical user interface [GUI], claims that merely simplify a task for the user without improving the functioning of the computer are ineligible abstract ideas."  (*Id.* at 7-10, 8 (citing

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384-85 (Fed. Cir. 2019) (holding claims directed to a GUI that "provid[es] information to traders in a way that helps them process information more quickly" were directed to an abstract idea because this interface "does not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem")).

Defendant further argues that, because "the asserted claims are directed to a GUI that organizes and allegedly simplifies tasks that microcontroller designers previously performed in their heads, on paper, or by using 'conventional' software[,]" this provides an additional basis for finding the Asserted Claims are directed to an abstract idea. (D.I. 19 at 8, 11-12 (citing *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (in finding claims were directed to an abstract idea, considering that, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper"); *X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1191 (N.D. Cal. 2017) (explaining that "an improvement in efficiency created by moving to a new technological environment does not render a patent non-abstract")).

Plaintiff responds by arguing that the Asserted Claims are not directed to an abstract idea because, "[a]s pled in the Complaint and as reflected in the prosecution history," the claimed system for programming a microcontroller "improve[s] the functionality of a computer" using a "specific technique that departs from earlier approaches." (D.I. 20 at 11-13 (citing *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019) ("The claims are directed to using a specific technique … to solve a technological problem arising in computer networks[.]"), *cert. den.*, 140 S.Ct. 1108 (2020)). Unlike the Asserted Claims, the prior art "does not teach, describe

5

or suggest an electronic device configuration system utilizing user modules." (D.I. 1 at ¶¶11-12, 12).

Plaintiff also asserts, "[Defendant] cannot demonstrate that the present claims can be performed by a human." (D.I. 20 at 13-14, 13). Specifically, Plaintiff rebuts Defendant's assertions that the claimed invention could be performed by hand as "lack[ing] any analysis or support … more than counsel's say-so[,]" noting that such assertions "cannot be considered because they directly contradict the facts and inferences … that were pled in the Complaint." (D.I. 20 at 6-7 (citing D.I. 1 at ¶¶11-12 (describing the inventiveness of the Asserted Claims))).

Defendant has not shown that the Asserted Claims are directed to an abstract idea. The Asserted Claims are instead directed to an improved user interface for computer devices allowing for more efficient programming of microcontrollers. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) ("The asserted claims in this case are directed to an improved user interface for computing devices, not to the abstract idea of an index[.]"); (*see also* D.I. 20 at 13-16). Like the Federal Circuit, I conclude, "Although the generic idea of [designing microcontrollers] certainly existed prior to the invention, these claims are directed to a particular manner [for designing a microcontroller] in electronic devices." *Core Wireless*, 880 F.3d at 1362-63. The '508 Patent's specification and prosecution history confirm that the Asserted Claims are directed to a user interface for designing microcontrollers that improves upon inefficiencies in prior software. *See* '508 Patent at 2:1-58; (D.I. 1 at ¶¶11-12); *see also Core Wireless*, 880 F.3d at 1363 (considering a specification's description of a more efficient user interface and finding that "this language clearly indicates that the claims are directed to an improvement in the functioning of computers"). "In other words, we are not faced with a situation where general-purpose computer components are added post-hoc to a fundamental economic

practice or mathematical equation. Rather, the claims are directed to a specific implementation of a solution to a problem in the software arts." *Enfish*, 822 F.3d at 1339.

Regarding Defendant's argument that the claimed invention could be performed on paper or in someone's head, I disagree on the current record. Indeed, the specification directly refutes Defendant's unsupported contention. *See* '508 Patent at 1:34-35 ("The application software is generally developed using a personal computer."). Moreover, it is unclear how a hand-drawn or imaginary circuit diagram could be used "for programming a target microcontroller device" (as is required by claim 12) when such programming may require "load[ing] [data] into the microcontroller's programmable memory to in turn program hardware resources of the microcontroller." '508 Patent at 1:34-38. Thus, the Asserted Claims are directed to improved software for programming a microcontroller that provides "a solution to a problem specifically arising in the realm of … computers." *TecSec*, 978 F.3d at 1293; *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008-09 (Fed. Cir. 2018) (considering that "the claims require a specific interface and implementation for navigating complex three-dimensional spreadsheets using techniques unique to computers" in finding claims were not directed to an abstract idea).

Further, I disagree that the Asserted Claims are akin to those found ineligible in *Trading Technologies*. In *Trading Technologies*, the Federal Circuit considered a claim directed to a GUI that "focuses on improving the trader, not the functioning of the computer[,]" by "providing a trader with new or different information in an existing trading screen." *Trading Techs.*, 921 F.3d at 1383. This claim was found to use a generic computer as a "tool for presentation" of trading information and, thus, "d[id] not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Id.* at 1385 (cleaned up). In contrast, the Asserted Claims are not directed to a GUI that merely presents information to a user. Instead, the

Asserted Claims are directed to improved software for programming a microcontroller. While this improved software relies on displaying information to a user as part of its operation, this is the case with any computer interface.

I think the Asserted Claims are closely analogous to those found eligible in *Core Wireless*, where the claims were directed to "an improved user interface for electronic devices, particularly those with small screens[,]" which "improves the efficiency of using the electronic device[.]" *Core Wireless*, 880 F.3d at 1363 (noting that the specification confirms that the considered claims improved upon efficiencies in prior art interfaces). Similarly, the Asserted Claims are directed to a software that allows for more "efficient programming of a microcontroller." (D.I. 1 at ¶12 (quoting the prosecution history)). For these reasons, I find that the Asserted Claims are not directed to an abstract idea.

"Because [I] conclude that the [Asserted Claims] … are not directed to an abstract idea, [I] need not proceed to step two of the *Alice* test." *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017).

### IV.   CONCLUSION

Defendant's motion for judgment on the pleadings is **DENIED**.

IT IS SO ORDERED this 2nd day of June 2022.

/s/ Richard G. Andrews<br>
United States District Judge